**2016-2558**

# In The
# United States Court of Appeals
## For The Federal Circuit

# IN RE: NORTH CAROLINA LOTTERY,

*Appellant.*

**APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, TRADEMARK TRIAL AND APPEAL BOARD IN NO. 86/411,401.**

_____

## BRIEF OF APPELLANT

_____

**David E. Bennett**
**David D. Kalish**
**COATS & BENNETT, PLLC**
**1400 Crescent Green, Suite 300**
**Cary, North Carolina  27518**
**(919) 854-1844**
**dbennett@coatsandbennett.com**
**dkalish@coatsandbennett.com**

*Counsel for Appellant*

## Certificate of Interest

Counsel for Appellant, David E. Bennett, certifies the following:

1. The full name of every party or amicus presented by me is:

   North Carolina Lottery

2. The name of the real party in interest represented by me is:

   North Carolina Lottery

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae presented by me are:

   None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Coats & Bennett, PLLC
   David E. Bennett, Esq.
   David D. Kalish, Esq.

# Table of Contents

**Page**

Certificate of Interest ...........................................................................i

Table of Contents ................................................................................ ii

Table of Authorities ........................................................................... iii

Statement of Related Cases................................................................v

I.      Statement of Jurisdiction ...............................................1

II.     Statement of the Issues ..................................................1

III.    Statement of the Case ....................................................1

        A.      Statement of the Facts ........................................2

IV.     Summary of the Argument ............................................4

V.      Argument .......................................................................5

        A.      Standard of Review .............................................5

        B.      Imagination is Required to Connect The Mark FIRST
                TUESDAY With NC Lottery's  Lottery Services, Lottery
                Cards, and Scratch Cards For Playing Lottery Games.........................6

        C.      Explanatory Text In Advertising Materials Does Not Make An
                Otherwise Suggestive Mark Descriptive...............................................8

VI.     Conclusion ..................................................................13

Addendum

Certificate of Filing and Service

Certificate of Compliance

# Table of Authorities

**Page(s)**

## Cases

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
537 F.2d 4 (2d Cir. 1976) ................................................................6

*Consol. Edison Co. v. N.L.R.B.*,
305 U.S. 197, 59 S. Ct. 206 (1938) .................................................6

*DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*,
695 F.3d 1247 (Fed. Cir. 2012) .......................................................6

*In re Abcore Development Corp.*,
588 F.2d 811 (C.C.P.A. 1978)...................................................6, 7, 9

*In re Bayer Aktiengesellschaft*,
488 F.3d 960 (Fed. Cir. 2007) ......................................................5, 6

*In re Carlson*,
91 U.S.P.Q.2d 1198 (T.T.A.B. 2009).........................................9, 10, 12

*In re Dial–A–Mattress Operating Corp.*,
240 F.3d 1341 (Fed. Cir. 2001) .......................................................5

*In re Grand Metropolitan Food Service, Inc.*,
30 U.S.P.Q.2d 1974 (T.T.A.B. 1994)...............................................13

*In re Hunter Fan Co*,
78 U.S.P.Q.2d 1474 (T.T.A.B. 2006)...............................................10

*In re Merrill, Lynch, Pierce, Fenner, and Smith Inc.*,
828 F.2d 1567 (Fed. Cir. 1987) ......................................................13

*In re Tennis in the Round Inc.*,
199 U.S.P.Q. 496 (T.T.A.B. 1978)..............................................6, 12

*In re The Place, Inc.,*
    76 U.S.P.Q.2d 1467 (T.T.A.B. 2005) ............................................................10

*In re TMS Corp of the Americas,*
    200 U.S.P.Q. 57 (T.T.A.B. 1978) ...................................................................6

*Swatch AG v. Beehive Wholesale, LLC,*
    739 F.3d 150 (4th Cir. 2014) ............................................................9, 11, 12

*Swatch S.A. v. Beehive Wholesale L.L.C.,*
    888 F. Supp. 2d 738 (E.D. Va. 2012) ...........................................................11

*Tumblebus Inc. v. Cranmer,*
    399 F.3d 754 (6th Cir. 2005) .......................................................8, 10, 11, 12

## Statutes

15 U.S.C. § 1070 ....................................................................................................1

15 U.S.C. § 1071(a) ...............................................................................................1

28 U.S.C. § 1295(a)(4)(B) .....................................................................................1

## Other Authority

J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND
UNFAIR COMPETITION § 11.67 (4th ed. 2016) ........................................................7

## Statement of Related Cases

There is no other appeal in connection with this case that has previously been before this Court or is currently pending in any other court. Counsel is unaware of any related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I.    Statement of Jurisdiction

The Trademark Trial and Appeal Board ("Board") had jurisdiction under 15 U.S.C. § 1070. This Court has jurisdiction under 15 U.S.C. § 1071(a) and 28 U.S.C. § 1295(a)(4)(B) over the present appeal from the Final Decision on Appeal dated July 12, 2016 by the Board, which affirmed the examiner's refusal to register the mark FIRST TUESDAY.

## II.    Statement of the Issues

Whether the Board erred in refusing to register the mark FIRST TUESDAY as being merely descriptive.

## III.    Statement of the Case

Appellant North Carolina Lottery (hereinafter "NC Lottery") seeks to register the mark FIRST TUESDAY in connection with lottery services, lottery cards, and scratch cards for playing lottery games.  The examiner refused registration maintaining that FIRST TUESDAY is merely descriptive of NC Lottery's goods and services.  A final rejection by the examiner was mailed on May 7, 2015.  Appx35-80.  On October 6, 2015 NC Lottery filed a Notice of Appeal (October 6, 2015). Appx81.  NC Lottery filed its Appeal Brief on December 7, 2015 (received May 24, 2006). Appx82-89.  The Examining Attorney's Appeal Brief was filed on February 2, 2016. Appx91-97.  NC Lottery filed Applicant's Reply Brief on February 17, 2016 and requested an oral hearing.

Appx98-101, Appx103-104.  Oral arguments were heard on May 4, 2016, and the

Board rendered its decision on July 12, 2016.  Appx106-108, Appx114-120.   A

Notice of Appeal for the present appeal was timely filed on August 24, 2016.

Appx112-113.

## A.    Statement of the Facts

NC Lottery is an independent state agency that operates the official lottery

of the State of North Carolina.  NC Lottery began providing lottery services in

2006 and has operated continuously since that date.  NC Lottery participates in

three multi-jurisdictional lottery draw games: Powerball, Lucky for Life, and Mega

Millions.  NC Lottery also conducts several daily lottery draw games including

Carolina Pick 3, Carolina Cash 5, and Carolina Pick 4.  In traditional lottery draw

games, a player purchases a lottery ticket and picks 3 to 6 numbers depending on

the particular game.   A drawing is held at a predetermined time.  A player wins a

prize if the numbers picked by that player match the numbers that are drawn.  A

player typically wins a large prize by matching all the numbers that are drawn and

may win a smaller prize by matching less than all the numbers that are drawn.

In addition to its traditional lottery draw games, NC Lottery also sells instant

scratch-off tickets.  Instant scratch-off tickets comprise cards with printed game

play information, such as numbers or symbols, hidden by latex coverings that can

be scratched off to reveal the game play information.  To play the instant scratch-

off game, a player purchases an instant scratch-off card and scratches off a predetermined number of latex coverings to reveal the game play information hidden underneath.  The player's winnings depend on the game play information that is revealed.   Instant scratch-off games are popular because the games can be played immediately after an instant scratch-off card is purchased.

In order to maintain interest in its instant scratch-off games, NC Lottery introduces new scratch-off games on the first Tuesday of every month.   The date for introducing the new instant scratch-off games is arbitrary.  On or about July 1, 2013, NC Lottery began using the mark FIRST TUESDAY to promote its instant scratch-off games.  The mark FIRST TUESDAY has been used continuously since July 2013 in television and radio advertising, in print advertising, on NC Lottery's web page, and on point of sale displays where instant scratch-off tickets are sold.

The ultimate goal of the FIRST TUESDAY advertising campaign was to increase awareness that new scratch-off games were available on the first Tuesday of every month in order to increase ticket sales.  The mark FIRST TUESDAY, however, is not self-explanatory.  Therefore, NC Lottery included explanatory text in its promotional materials so that consumers familiar with NC Lottery's goods and services would understand that new scratch-off tickets were available on the first Tuesday of every month.   An exemplary specimen submitted with the application is shown below.

3



In this exemplary advertisement, the phrase "New scratch-offs" appears below the mark FIRST TUESDAY.  Even with the explanatory text, it takes some imagination to connect the mark FIRST TUESDAY with the idea that new scratch-off tickets are available on the first Tuesday of every month. Without such explanatory text, the meaning of the mark FIRST TUESDAY would be lost on consumers of NC Lottery's lottery services and instant scratch-off games.

### IV.    Summary of the Argument

The mark FIRST TUESDAY does not directly and immediately convey any specific idea about the characteristics or features of Applicant's goods and services.  At best, the mark FIRST TUESDAY suggests a particular day to a consumer, but leaves to the consumer's imagination what happens on that particular day. A mental leap is required to connect the mark FIRST TUESDAY with the goods and services offered by NC Lottery. A consumer with only general

knowledge of NC Lottery's goods and services would have to reflect on NC Lottery's goods and services to ascertain any connection between the mark and those goods and services. The need to reflect on NC Lottery's goods and services in order to connect the mark to those goods and services is the hallmark of a suggestive mark.

The presence of explanatory text in NC Lottery's advertising does not make the mark FIRST TUESDAY merely descriptive. The explanatory text is necessary because in the mark FIRST TUESDAY is not self-explanatory or descriptive. If anything, the need to use explanatory text in order to connect the mark FIRST TUESDAY with NC Lottery's goods and services is evidence that the mark FIRST TUESDAY is suggestive.

## V.    Argument

### A.    Standard of Review

The determination whether a mark is merely descriptive is a question of fact. *In re Dial–A–Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001) ("Placement of a term on the fanciful-suggestive-descriptive-generic continuum is a question of fact."); *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 964 (Fed. Cir. 2007). "The examining attorney has the burden to establish that a mark is merely descriptive." *In re Bayer*, 488 F.3d at 964.

The Federal Circuit reviews the Board's factual findings for substantial evidence. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd*., 695 F.3d 1247, 1252 (Fed. Cir. 2012); *In re Bayer*, 488 F.3d at 964. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Bayer*, 488 F.3d at 964; *Consol. Edison Co. v. N.L.R.B*., 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938).

**B.** **Imagination is Required to Connect The Mark FIRST TUESDAY With NC Lottery's Lottery Services, Lottery Cards, and Scratch Cards For Playing Lottery Games**

A mark is considered merely descriptive if "it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Abercrombie & Fitch Co. v. Hunting World, Inc*., 537 F.2d 4, 11 (2d Cir. 1976); *In re Abcore Development Corp.*, 588 F.2d. 811, 814 (C.C.P.A. 1978). Moreover, the immediate idea must be conveyed with a "degree of particularity." *In re TMS Corp of the Americas*, 200 U.S.P.Q. 57, 59 (T.T.A.B. 1978) (holding that the mark THE MONEY SERVICE is not merely descriptive for financial services involving transfer of funds to and from savings accounts). On the other hand, a term is suggestive if "it requires imagination, thought, and perception to reach a conclusion as to the nature of the goods." *Abercrombie & Fitch Co*., 537 F.2d at 11; *In re Tennis in the Round, Inc*., 199 USPQ 496, 497-498 (TTAB 1978).

6

Placing a given mark on the spectrum of distinctiveness turns on how immediate and direct the thought process is to reach a conclusion regarding the good or services. "Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Abcore Development Corp.*, 588 F.2d. at 814. As stated by Professor McCarthy in his treatise, "[i]f the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 11.67 (4th ed. 2016).

In the present case, some imagination is needed in order to connect the mark FIRST TUESDAY with NC Lottery's goods and services. The terms "first" and "Tuesday" individually do not impart any information about NC Lottery's lottery services and lottery cards. The combined mark FIRST TUESDAY likewise does not convey any meaningful information about lottery services or lottery cards. When first presented with the mark FIRST TUESDAY, a consumer with only general knowledge of NC Lottery's lottery games would not have any definitive idea what the phrase "first Tuesday" means. At most, the phrase "first Tuesday" suggests a particular day to a consumer but leaves to the consumer's imagination what happens on that particular day. A mental leap is required to connect the

phrase "first Tuesday" with the goods and services offered by NC Lottery.  The

vague suggestion that something may happen on a particular Tuesday does not

immediately convey to a consumer any definitive idea about the nature, quality, or

characteristics of the NC Lottery's lottery services.

**C.    Explanatory Text In Advertising Material Does Not Make An Otherwise Suggestive Mark Descriptive.**

In affirming the examiner's refusal to register the mark, the Board relies on

NC Lottery's advertising materials to support the finding that FIRST TUESDAY is

descriptive.  Admittedly, NC Lottery's advertising contains explanatory text

indicting that NC Lottery offers new scratch-off tickets on the first Tuesday of

every month.  This explanatory text, however, does not support the finding that the

mark FIRST TUESDAY is merely descriptive.  On the contrary, the fact that NC

Lottery found it necessary to explain the connection between the mark and NC

Lottery's goods and services shows that the mark is not descriptive.  *Tumblebus*

*Inc. v. Cranmer*, 399 F.3d 754, 759 (6th Cir. 2005) ("..the fact that Tumblebus Inc.

has found it necessary to include explanatory phrases such as 'gym on wheels' in

its advertising materials indicates that the term TUMBLEBUS does not merely

describe the services provided by Tumblebus Inc.").

That a consumer may grasp the connection between the mark FIRST

TUESDAY and NC Lottery's goods and services once that connection has been

explained is not the issue. The relevant question is whether *the mark* immediately

and directly conveys meaningful information to a person with only general knowledge of NC Lottery's goods and services. *Swatch AG v. Beehive Wholesale, LLC*, 739 F. 3d 150, n. 8 (4th Cir. 2014) ("..while we have previously held that 'the distinctiveness of a mark is measured in connection with the particular goods or services that are being offered,' we have not required that the goods be defined with the degree of specificity Swatch desires."). If the significance of the mark is not immediately apparent to someone with general familiarity with NC Lottery's goods and services, the mark is not descriptive but rather is suggestive. The presence of the explanatory text in the advertising does not support the finding that the mark is descriptive. Rather, the explanatory text describing the significance of the mark is necessary because the mark itself does not convey any meaningful information about NC Lottery's goods and services.

The cases relied upon by the Board are inapposite to the facts of the present case. In *In re Abcore Development Corp*., the Board held that the mark GASBADGE was merely descriptive of gas monitoring badges. 588 F.2d. at 814-815. The Board cited the specimen as evidence confirming the already apparent significance of the mark. *Id*. In *In re Carlson*, the Board found that the mark URBAN HOUZING for real estate services was merely descriptive. 91 U.S.P.Q.2d 1198, 1202 (T.T.A.B. 2009). In this case, the Applicant admitted that the term "urban housing" was descriptive, but argued that the mark considered in

context had a double entendre. The Board held that "[a] mark thus is deemed a double entendre only if both meanings are readily apparent *from the mark itself*." *Id.* (citing *In re The Place, Inc.*, 76 U.S.P.Q.2d 1467, 1470 (T.T.A.B. 2005)) (emphasis in original).  If anything, *In re Carlson* supports Applicant's position that the meaning of the mark should be apparent from the mark itself.  In *In re Hunter Fan Co*, 78 U.S.P.Q.2d 1474 (T.T.A.B. 2006), the Board held that ERGONOMIC was merely descriptive of ceiling fans, based in part on the Applicant's use of the term "ergonomic" in advertising to describe its ceiling fans. None of the cases cited by the Board present the same fact pattern being considered here, where the significance of the mark is only apparent after reading explanatory text contained in advertising material.

The *Tumblebus* case, on the other hand, presents a fact pattern similar to the present case.  In *Tumblebus*, the Plaintiff sought to enforce the mark TUMBLEBUS for mobile gymnastic instruction services.  The Plaintiff provided gymnastic instructions using a school buses retrofitted with gymnastics equipment. The Plaintiff included explanatory text such as "Gym On Wheels" in its advertisements to explain the services to consumers.  The District Court found that the mark was suggestive, and this finding was affirmed by the Sixth Circuit.  The Court held that "the connection between 'tumble' and 'bus' is not so obvious that a consumer seeing Tumblebus in isolation would know that the term refers to mobile

10

gymnastics instruction…" *Tumblebus*, 399 F.3d at 759. The Sixth Circuit further held that "the fact that Tumblebus, Inc. has found it necessary to include explanatory phrases such as 'Gym On Wheels' in its advertising material indicates that the term TUMBLEBUS does not merely describe the services provided by Tumblebus, Inc." *Id*.

Another instructive case is *Swatch*. In this case, the Plaintiff, Swatch, brought an action to cancel Beehive's registration for the mark SWAP for watches having interchangeable bands and watch faces. As evidence of descriptiveness, Swatch proffered promotional materials containing diagrams and text explaining the function of Beehive's watches. The advertisements included diagrams with arrows and the mark SWAP followed by "It." Upholding the district court's finding that the mark was suggestive, the Fourth Circuit held:

> "..merely showing the mark and the product together would be insufficient to convey its attributes. While a merely descriptive mark could be used in this manner, "[e]xplaining the function of [Beehive's] product requires a further leap."

*Swatch*, 739 F.3d at 157 (citing *Swatch S.A. v. Beehive Wholesale L.L.C.*, 888 F. Supp. 2d 738, 760 (E.D. Va. 2012)). The Fourth Circuit further held that "even retail professionals familiar with the products had to exercise some imagination to connect SWAP with the function of Beehive's watches". The Fourth Circuit cited Beehive's promotional materials included explanatory text and diagrams as evidence of suggestiveness.

In another case, the TTAB found that the mark TENNIS IN THE ROUND was not merely descriptive of tennis facilities although the specimens clearly depicted a round tennis facility where tennis was played. *In re Tennis in the Round Inc.*, 199 U.S.P.Q. 496 (TTAB 1978).

The *Tumblebus*, *Swatch*, and *Tennis in the Round* cases demonstrate that the use of explanatory phrases and text in advertisements do not make an otherwise non-descriptive mark descriptive. In some cases, the explanatory text is necessary because the connection between the mark and the goods and services is not apparent from the mark itself to a person with general familiarity of the goods or services. A mark should not be found descriptive where the significance of the mark is not apparent from a consideration of the mark itself and the goods or services on which the mark is used. *In re Carlson*, 91 U.S.P.Q.2d at 1202.

Finding a mark to be descriptive based solely on explanatory text in advertising materials would produce incongruous results. Placing too much reliance on explanatory text in advertising would mean that some marks used in advertising with explanatory text would be found to be descriptive while similar marks without the explanatory text would be found to be non-descriptive. The proper test of descriptiveness is not whether the advertising material explains the significance of the mark, but whether the mark itself *immediately conveys* to consumers information about the ingredients, qualities, or characteristics of the

trademark owner's goods and services. The thought process to arrive at an understanding must be immediate and direct. If explanatory text is necessary to explain the significance of the mark to a person familiar with the goods and services, then the mark is not descriptive.

The examiner bears the burden of proving descriptiveness. *In re Merrill, Lynch, Pierce, Fenner, and Smith Inc.*, 828 F.2d 1567 (Fed. Cir. 1987). Additionally, when there is any doubt regarding the descriptiveness of a mark, such doubt should be resolved in favor of the NC Lottery. *In re Grand Metropolitan Food Service, Inc.*, 30 U.S.P.Q.2d, 1974, 1976 (TTAB 1994). The examiner has failed to meet her burden of proving descriptiveness. At most, the phrase "first Tuesday" suggests a particular day to a consumer but leaves to the consumer's imagination what happens on that particular day. Thus, the mark FIRST TUESDAY does not immediately convey information about NC Lottery's goods and services with the required degree of particularity.

## VI.    Conclusion

For the reasons stated above, the Board's Decision on Appeal should be reversed.

Respectfully submitted,

December 5, 2016


/s/ David E. Bennett
David E. Bennett
Principal Counsel
David D. Kalish

COATS & BENNETT, P.L.L.C.
1400 Crescent Green, Suite 300
Cary, North Carolina  27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
dbennett@coatsandbennett.com
dkalish@coatsandbennett.com

*Counsel for Appellant*

# **ADDENDUM**

# **TABLE OF CONTENTS**

**Addendum Page**

Opinion of
U.S. Patent and Trademark Office
Trademark Trial and Appeal Board
     filed May 17, 2016...........................................................................................1

This Opinion is not a
Precedent of the TTAB

Oral Hearing: May 4, 2016                          Mailed: July 12, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
———

Trademark Trial and Appeal Board
———

*In re North Carolina Lottery*
———

Serial No. 86411401
———

David E. Bennett of Coats & Bennett PLLC,
    For North Carolina Lottery

Lindsey Ben, Trademark Examining Attorney, Law Office 108,
    Andrew Lawrence, Managing Attorney.

———

Before Wolfson, Shaw and Goodman,
    Administrative Trademark Judges.

Opinion by Goodman, Administrative Trademark Judge:

North Carolina Lottery ("Applicant") seeks registration on the Principal Register

of the mark FIRST TUESDAY (in standard characters) for "Lottery cards; Scratch

cards for playing lottery games" in International Class 28 and for "Lottery services"

in International Class 41.[1]

The Trademark Examining Attorney has refused registration of Applicant's

proposed mark under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on

_____

[1] Application Serial No. 86411401 was filed on October 1, 2014, based upon Applicant's claim
of first use anywhere and use in commerce since at least as early as July 1, 2013.

the ground that the term FIRST TUESDAY is merely descriptive of Applicant's goods and services.

After the Trademark Examining Attorney made the refusal final, Applicant appealed to this Board. We affirm the refusal to register.

## I.   Applicable Law

Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), precludes registration of a mark that, when applied to the goods or services of the applicant, is merely descriptive of them. "A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). Whether a term is merely descriptive is determined not in the abstract, but "in relation to the particular goods [or services] for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods [or services] because of the manner of its use or intended use." *In re Bayer Aktiengesellschaft*, 82 USPQ2d at 1831. *See also In re Chamber of Commerce*, 102 USPQ2d at 1219. "The question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *In re Tower Tech, Inc.*, 64 USPQ2d 1314, 1316-1317 (TTAB 2002).

## II.    Analysis

The Examining Attorney argues that the proposed mark is merely descriptive of a feature of the goods and services, namely new scratch-off lottery games that begin on the first Tuesday of every month. Applicant argues that the combined terms FIRST TUESDAY do not convey any meaningful information about lottery services or lottery cards, and that an ordinary consumer "would not be able to reach any conclusion about the meaning of the phrase FIRST TUESDAY based solely on the mark itself."[2] Applicant argues that

> [t]o connect the mark FIRST TUESDAY to Applicant's lottery services and lottery cards, a consumer must be told that Applicant issues new instant scratch-off games on the first Tuesday of every month. Absent this knowledge, an ordinary consumer would not be able to discern the meaning of the phrase 'first Tuesday.'[3]

Applicant submits that, based solely on the mark itself, "at most the phrase 'first Tuesday' suggests a particular day to a consumer but leaves it to the consumer's imagination what happens on that particular day,"[4] requiring mental thought and multi-step reasoning to discern the meaning of the phrase "first Tuesday."[5] In its brief, Applicant states that it "introduces a new scratch-off game on the first Tuesday of every month."[6]

---

[2] 4 TTABVUE 5, 6.

[3] 4 TTABVUE 6.

[4] 4 TTABVUE 5.

[5] 4 TTABVUE 4-5.

[6] 4 TTABVUE 3.

When considering the context in which the mark is being used, we may look to labels, packages, displays, or advertising material directed to these goods and services as that is how the purchaser encounters the mark in the marketplace. *In re Nett Designs*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) (looking at applicant's advertising brochures in connection with determining whether consumers would perceive mark as descriptive); *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978) (in descriptiveness case, court stated, "Evidence of the context in which a mark is used in labels, packages, or advertising materials directed to the goods is probative of the reaction of prospective consumers to the mark."). *See, e.g., In re Carlson*, 91 USPQ2d 1198 (TTAB 2009) ("Of course, specimens and promotional material may be used to prove that a mark is merely descriptive, and statements made in them can show that a term describes a feature or characteristic of the goods or services."); *In re Hunter Fan Co.*, 78 USPQ2d 1474, 1476 (TTAB 2006) (finding that the applicant's use of applied-for mark, as evidenced in its specimen of use, "highlights the descriptive nature of this term").

The specimens submitted by Applicant are shown below.



Serial No. 86411401



Applicant's website also indicates that new scratch-off tickets are available the first Tuesday of every month.



We find the proposed mark FIRST TUESDAY merely describes a feature or characteristic of lottery cards, scratch lottery cards, and lottery services. As shown by the specimens and Applicant's website, new scratch-off games are offered on the first Tuesday of every month, and will be so understood by the relevant consumers

who encounter the designation FIRST TUESDAY in the marketplace. No mental thought or multi-step reasoning is required to reach a conclusion as to the nature of the involved goods and services.

We are unpersuaded by Applicant's arguments that a lack of descriptiveness is evidenced by the absence in the record of evidence of competitor use of the phrase "first Tuesday" or evidence of any use of the term as a whole in connection with lottery cards or lottery services. We note that the Examining Attorney is not required to show such use in order to establish that a term is merely descriptive. *See In re Fat Boys Water Sports LLC,* 118 USPQ2d 1511, 1514 (TTAB 2016) (no requirement that examining attorney prove competitor's need to use mark); *In re Sun Microsystems Inc.,* 59 USPQ2d 1084, 1087 (TTAB 2001) (citations omitted). The fact that an applicant may be the first or only user of a descriptive designation does not justify registration if that term is merely descriptive. *Id.* With regard to Applicant's argument that its proposed mark is suggestive "based solely on the mark itself," we note that is not the test. Rather, we must determine whether FIRST TUESDAY is merely descriptive in the context in which it is used in connection with the recited services. *In re Bayer Aktiengesellschaft*, 82 USPQ2d at 1831. As discussed above, consumers encountering Applicant's mark in connection with its lottery cards, scratch cards and lottery services will understand FIRST TUESDAY to merely describe an important feature of Applicant's goods and services.

III.    Conclusion

The evidence discussed above shows that FIRST TUESDAY is merely descriptive of a feature or characteristic of Applicant's goods and services. Considering the two terms together, relevant customers would readily perceive the alleged mark to mean that new scratch-off lottery tickets are offered the first Tuesday of a month.

**Decision**: The refusal to register is affirmed.

## Certificate of Filing and Service

I hereby certify that on this 5th day of December, 2016, I caused this Brief

of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Nathan K. Kelley
> Thomas L. Casagrande
> Christina Hieber
> William LaMarca
> U.S. PATENT AND TRADEMARK OFFICE
> Office of the Solicitor
> Post Office Box 1450, Mail Stop 8
> Alexandria, Virginia  22313
> (571) 272-9035
> nathan.kelley@uspto.gov
> thomas.casagrande@uspto.gov
> christina.hieber@uspto.gov
> william.lamarca@uspto.gov

*Counsel for Appellee*

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Brief of Appellant will be hand

filed at the Office of the Clerk, United States Court of Appeals for the Federal

Circuit in accordance with the Federal Circuit Rules.

/s/ David E. Bennett
*Counsel for Appellant*

## Certificate of Compliance

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*2,881*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 5, 2016          /s/ David E. Bennett
                                 *Counsel for Appellant*